DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Wood County Court of Common Pleas which granted summary judgment to appellee, State Farm Mutual Insurance Company ("State Farm"), and appellee Federal Insurance Company ("Federal"), in this dispute concerning underinsured motorist ("UIM") coverage pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660. For the reasons stated herein, this court affirms the judgment of the trial court.
The following facts are relevant to this appeal. Appellants were injured in a motor vehicle collision on December 24, 1997, caused by Ricki Richmond, II ("Richmond").[1] On June 8, 2000, appellant Tina A. Devore ("Tina") filed an amended complaint setting forth UIM claims pursuant to Scott-Pontzer, supra, against State Farm and Federal under policies issued to Air Ride, Inc. ("Air Ride"). On October 16, 2000, Tina's case was consolidated with a case filed by appellant, Douglas Devore, ("Douglas") against Richmond and which also set forth UIM claims pursuant to Scott-Pontzer, against State Farm and Federal under policies issued to Air Ride.[2]
At the time of the accident, Douglas was employed by Air Ride. Air Ride had eleven separate policies of insurance with State Farm insuring its company vehicles, each with a UIM coverage limit of $100,000 per person and $300,000 per accident. Air Ride had two policies of insurance with Federal; one policy was a commercial general liability policy ("CGL") with $1 million in coverage per occurrence and the other was a garage policy with a liability limit of $1 million.
State Farm and Federal filed motions for summary judgment. Appellants opposed the summary judgment motions filed by State Farm and Federal. Tina also filed a motion for summary judgment as to State Farm.
In its judgment entry, the trial court found that the circular definitions of "you," "insured," and "person" in the State Farm policy[3]
created an ambiguity when read together within the context of the contract. The trial court concluded that if it were to accept State Farm's analysis of the contract language, paragraph numbers 1-3 would be completely meaningless and provide no coverage at all to Air Ride and paragraph number 4b would not make sense. The trial court concluded that underinsured coverage would be non-existent to Air Ride in situations where its employees drove their personal vehicles while acting during the scope of employment. Thus, the trial court concluded that Douglas and Tina were insureds under the State Farm policy. However, the trial court concluded that Douglas and Tina were not entitled to stack the policies and State Farm was entitled to a set off of the $100,000 which Tina and Douglas each received from Richmond's liability policy.
In regard to the CGL policy issued by Federal, the trial court concluded that the incidental coverage provided for leaving an automobile on the corporations' premises did not render the Federal CGL policy a motor vehicle liability policy. The trial court further found that Tina would not be an insured under the Federal CGL policy because the policy defined insureds to cover an employee while in the course of his or her employment. As Douglas was not in the course of his employment at the time of the accident, Tina would not be entitled to UIM coverage.
In regard to the garage policy issued by Federal, the trial court concluded that, although the garage policy was an automobile liability policy for purposes of R.C. 3937.18, Tina was not an insured because she was not within the definition of insureds under the garage policy because the policy defined insureds to cover employees only while acting within the scope of their duties.
The trial court granted summary judgment to State Farm; granted summary judgment to Federal; and denied summary judgment to Tina. Appellants separately filed timely notices of appeal.
Douglas sets forth the following two assignments of error:
 "1. Doug Devore is an insured of State Farm and His UIM claim is governed by Coverage W, Section 2, of the State Farm policies in question.
 "2. The trial court incorrectly determined the State Farm policies contained anti-stacking language applicable to Devore's situation and miscalculated State Farm's obligation to pay its pro rata share of Doug's underinsured damages."
Tina sets forth the following two assignments of error:
 "1. The trial court erred when it granted State Farm Mutual Insurance Company's motion for summary judgment, and denied Tina Devore's motion for summary judgment.
 "2. The trial court erred when it granted Federal Insurance Company's motion for summary judgment, and denied Tina Devore's motion for summary judgment."
In reviewing the grant of summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
This court will first discuss both assignments of error asserted by Douglas and the first assignment of error asserted by Tina. In his assignments of error, Douglas argues that the trial court erred in granting summary judgment to State Farm. Specifically, Douglas argues that the trial court erred in ruling that a single State Farm policy was the only UIM coverage applicable; erred in ruling that State Farm was entitled to set-off the per person limit of one of the eleven policies by Richmond's liability policy limits; erred in determining that anti-stacking language was applicable to this case; and erred in its calculation of the "amounts available for payment" to Douglas from Richmond. In her first assignment of error, Tina asserts that the trial court erred in granting summary judgment to State Farm and erred in denying her motion for summary judgment. This court finds no merit in these assignments of error.
In Wallace v. Balint (2002), 94 Ohio St.3d 182, 186, in regard to stacking, the Ohio Supreme Court stated:
 "We agree that decedent's estate is attempting to aggregate the underinsured motorist benefits of decedent's second policy on top of the benefits already paid out of decedent's first policy. Likewise, decedent's parents, James and Wanda, seek to aggregate the underinsured motorist benefits under their four separate policies. What the estate and the decedent's parents seek clearly violates the antistacking language of the policies.
 "However, given the definition of `stacking' as found in Savoie and in the other sources cited above, and the fact that each of the eight policies in question is a separate contract between State Farm and the underinsured motorist policy holder, clearly stacking does not occur when the estate is limited to only one of decedent's two policies, the parents are limited to only one of their four separate policies, and Christopher and Katrina are limited to their own individual policies. If the estate were permitted coverage under decedent's second policy, that would be stacking. If the parents were permitted coverage under more than one of the four separate policies that they have with State Farm, that would be stacking. If Christopher were permitted coverage under any of the other policies — in addition to his own separate policy — that would be stacking. The same is true of Katrina."
In Lemble v. Belknap (Sept. 30, 1999), Lucas App. No. L-98-1417, this court found anti-stacking policy language similar to that in the case sub judice to be unambiguous. Furthermore, this court found that a policy need not contain the word "anti-stacking" to make the policy clear. Thus, the anti-stacking policy language in the case sub judice is enforceable.
In regard to the set-off argument, in Littrell v. Wigglesworth (2001),91 Ohio St.3d 425, syllabus, the Ohio Supreme Court held:
 "For the purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier). Clark v. Scarpelli (2001), 91 Ohio St.3d 271, 744 N.E.2d 719, followed and applied."
R.C. 3937.18(A)(2) provides:
 "Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
As the Ohio Supreme Court stated in Clark v. Scarpelli (2001),91 Ohio St.3d 271, 276:
"It is clear that underinsured motorist coverage, as described in R.C.3937.18(A)(2) as amended by S.B. 20, was not intended to be `excess insurance' to the tortfeasor's applicable automobile liability insurance. The language of the statute is unmistakable. The language of R.C. 3937.18(A)(2) also makes clear that the statute was intended to ensure that a person injured by an underinsured motorist should never be afforded greater protection than that which would have been available had the tortfeasor been uninsured."
The Supreme Court of Ohio held that, "for the purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Id., syllabus.
As appellants each received a settlement of $100,000 from Richmond, the tortfeasor, the amount actually received by appellants was identical to the amount of the State Farm UIM coverage issued to Air Ride. Thus, the amount paid pursuant to Richmond's policy completely offsets the amount available under the Air Ride State Farm policy. Thus, appellants are not entitled to additional UIM coverage under the Air Ride State Farm policy.
Accordingly, both assignments of error asserted by Douglas and the first assignment of error asserted by Tina are found not well-taken.
In her second assignment of error, Tina asserts that the trial court erred in granting summary judgment to Federal and erred in denying her motion for summary judgment. This court finds no merit in this assignment of error.
In the Federal CGL policy, coverage was provided for:
 "Parking an auto on, or on the ways, next to premises you own or rent provided that the auto is not owned by or rented or loaned to you or the insured."
Tina asserts that the policy provision was sufficient to provide motor vehicle liability coverage, pursuant to Selander v. Erie Ins. Group
(1999), 85 Ohio St.3d 541, and Davidson v. Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262, and, thus, she was entitled to UIM coverage.
"For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmer's Ins.Group of Cos. (1998), 82 Ohio St.3d 281, syllabus. R.C. 3937.18, as amended by H.B. 261, which took effect September 3, 1997, applies in the instant case as the policy period was October 16, 1997 through October 16, 1998, for both the CGL policy and garage policy. This version of R.C. 3937.18 provides, in pertinent part:
"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
"* * *
"(L) As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
"(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
"(2) Any umbrella liability policy of insurance."
In Davidson v. Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262, 267, the Ohio Supreme Court stated:
"In Selander, we were construing a general business liability policy that expressly provided insurance against liability arising out of the use of automobiles that were used and operated on public roads. Since there was express automobile liability coverage arising out of the use of these automobiles, we reasoned that UM/UIM coverage was required. That holding comports with the requirement under R.C. 3937.18 that UM/UIM coverage must be offered where the policy is an automobile or motor vehicle liability policy. In contrast, the policy at issue in this case is a homeowner's policy that does not include coverage for liability arising out of the use of motor vehicles generally. Instead, the homeowner's policy provides incidental coverage to a narrow class of motorized vehicles that are not subject to motor vehicle registration and are designed for off-road use or are used around the insured's property."
When responding to a similar argument[4] regarding a general liability policy in Pickett v. Ohio Farmers Ins. Co., 5th Dist. Nos. 2001CA00227, 2001CA00236, 2002-Ohio-259, appeal granted,95 Ohio St.3d 1473, 2002-Ohio-2444, the Fifth Appellate District noted:
"Furthermore, Selander applied a version of R.C. § 3937.18
predating the enactment of House Bill 261, which became effective on September 3, 1997. House Bill 261 amended R.C. 3937.18 to include subsection (L) cited above. Prior to such time, there was no language in R.C. 3937.18 defining `automobile liability or motor vehicle liability policy of insurance.' Thus, the Selander case is not applicable to the case sub judice."
See also, Uzhca v. Derham, 2nd Dist. No. 19106, 2002-Ohio-1814, at ¶ 54-55, wherein the court applied R.C. 3937.18(L) in its analysis of a CGL policy and stated:
"Great Northern's commercial general liability policy provides several types of coverage: property insurance, general liability insurance, and crime insurance for various offenses. It does not specifically identify any motor vehicles. In fact, it specifically excludes coverage for `bodily injury or property damage arising out of the ownership, maintenance, use, operation, loading or unloading, or entrustment to others of any * * * auto.' However, the exclusion does not apply to: `Parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured.' Maria argues that this exception to the exclusion constitutes liability coverage such that the commercial general liability policy is an `automobile liability or motor vehicle liability policy of insurance.' We disagree.
"The very language of the policy makes clear that it is not designed to provide proof of financial responsibility for any automobile. It excludes liability coverage for automobiles, and the exception to that exclusion specifies that it only covers parking of automobiles on the insured's property if those automobiles are not owned by the insured. Furthermore, the policy does not provide liability insurance with respect to any vehicles `specifically identified in the policy of insurance' as required by R.C. 3937.18(L)(1). Therefore, it does not, as required by the statute `serve as proof of financial responsibility * * * for owners or operators of the motor vehicles specifically identified in the policy of insurance.' It does not serve as proof of financial responsibility for owners or operators of any vehicle at all."
This court finds that the CGL policy in this case does not serve as proof of financial responsibility as defined in R.C. 4509.01(K) for owners or operators of specifically identified vehicles. This court therefore finds, in accordance with R.C. 3937.18, that the CGL policy issued in the case sub judice is not an automobile liability or motor vehicle liability policy of insurance. Additionally, even if the CGL policy was an automobile liability or motor vehicle liability policy of insurance, Tina would not be an insured under the CGL policy as insureds were defined to cover employees "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."
The above analysis of what is an automobile liability or motor vehicle liability policy of insurance pursuant to R.C. 3937.18 is also applicable to the garage policy and results in the same conclusion: the garage policy in this case does not serve as proof of financial responsibility as defined in R.C. 4509.01(K) for owners or operators of specifically identified vehicles. This court therefore finds, in accordance with R.C. 3937.18, that the garage policy issued in the case sub judice is not an automobile liability or motor vehicle liability policy of insurance. Additionally, even if the garage policy was an automobile liability or motor vehicle liability policy of insurance, Tina would not be an insured under the policy as insureds were defined to cover employees "but only while acting within the scope of their duties."
Accordingly, Tina's second assignment of error is found not well-taken.
The judgment of the Wood County Court of Common Pleas is affirmed. Costs assessed to appellants.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., Richard W. Knepper, J., CONCUR.
James R. Sherck, J., dissents.
[1] Initially, Tina had filed a complaint against Richmond and Douglas as well as ABC and XYZ insurance companies. Richmond settled Tina's claim against him for the $100,000 coverage limit under his policy. Tina also settled with CNA Insurance Company ("CNA") for $625,000 under the UIM coverage of a trucker liability insurance policy issued to Air Ride with a single limit UM/UIM motorist coverage of one million dollars. CNA was given a set-off for the $100,000 paid to Tina for the coverage limit under Richmond's policy.
[2] Douglas settled with Richmond for the $100,000 coverage limit under Richmond's policy and with CNA for $175,000 under the policy described in Footnote 1. CNA was given a set-off for the $100,000 paid to Douglas for the coverage limit under Richmond's policy.
[3] The State Farm policy provides:
"Who is an insured-Coverages U, U1 and W
 "Insured means the person or persons covered by coverages U, U1 and W. This is:
"1. the first person named in the declarations;
"2. his or her spouse;
"3. their relatives;
"4. any other person while occupying:
 "a. your car, a temporary substitute car, a newly acquired car or a trailer attached to your car. Such vehicle has to be used within the scope of the consent of you or your spouse; or
 "b. a car not owned by you, your spouse or any relative, or a trailer attached to your car. It has to be driven by the first person named in the declarations or that person's spouse and within the scope of the owner's consent.
 "Such other person occupying a vehicle used to carry persons for a charge is not an insured.
 "5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above." (Emphasis sic.)
The State Farm policy defined "person" as a human being.
[4] In Watkins v. Transcontinental Ins. Co. (2001), 94 Ohio St.3d 1406,1407, the Ohio Supreme Court declined to answer the following certified question in regard to a commercial general liability policy:
 "1. Does language in the policy that provides limited liability coverage for parking an auto on, or on the ways next to premises the insured owns or rents, and for the operation of mobile equipment including cherry pickers or similar devices mounted on automobile or truck chassis transform the policy into a `motor vehicle liability policy' for which an offer of UM/UIM coverage was mandated by the version of R.C. 3937.18
in effect at the time the policy was issued?"